**CASE NO. 26-11795**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

LAURA LOOMER

Plaintiff-Appellant,
v.

BILL MAHER, et al.

Defendants-Appellees.

---

APPEAL FROM AN ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

**APPELLANT'S BRIEF**

---

*/s/ Frederick Sujat*
Frederick Sujat, Esq.
5675 Brookfield Cir E
Fort Lauderdale, FL, 33312
fsujat@yahoo.com
Tel: 954-815-5221

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Appellant Laura Loomer certifies that the following persons may have an interest in this case:

1. Katherine M. Bolger

2. Davis Wright Tremaine LLP

3. Yelan Escalona

4. Rachel Fugate

5. Home Box Office, Inc.

6. Larry Klayman

7. Hon. Philip R. Lammens

8. Laura Loomer

9. Bill Maher

10. Hon. James. S. Moody, Jr.

11. Alexandra Perloff-Giles

12. Shullman Fugate PLLC

13. Frederick Sujat

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument, as it will assist the Court and allow for counsel to answer any questions that the Court may have.

*/s Frederick J. Sujat*

## **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..........................1

STATEMENT OF THE CASE ...................................................................1

SUMMARY OF THE ARGUMENT ............................................................3

STANDARD OF REVIEW ......................................................................4

ARGUMENT .....................................................................................4

    The Defamatory Statement Is An Actionable Statement of Fact...................6

        Maher's Self-Serving Testimony Regarding His Intent is Irrelevant...6

        Appellees' Self-Characterization of Maher as a "Comedian" Does Not
        Entitle Them to Summary Judgment .......................................9

        The Defamatory Statement Was Reasonably Understood as a
        Statement of Fact .............................................................11

        Alternatively, at a Minimum, The Defamatory Statement is
        Defamation by Implication ..................................................16

        Alternatively, at a Minimum, The Defamatory Statement Is
        Actionable Mixed-Opinion ..................................................18

    Appellees Are Not Entitled to Summary Judgment on the Issue of Actual
    Malice.............................................................................20

        The Defamatory Statement Was Patently Worthy of Doubt And There
        is Record Evidence Showing This Which Was Ignored by the District
        Court .............................................................................21

        Appellees Had No Reputable Sources For the Defamatory Statement
        and Their Investigation was Grossly Inadequate.............................24

        The District Court Ignored Other Evidence of Actual Malice............26

    Appellees Are Not Entitled to Summary Judgment on the Issue
    of Damages .......................................................................29

CONCLUSION ...................................................................................36

## Table of Authorities

## Cases

*Barnes v. Horan*, 841 So. 2d 472 (Fla. Dist. Ct. App. 2002) ...................................5

*Belcalis Marlenis Almanzar v. Latasha Transrina Kebe et al*, 1:19-cv-1301 (N.D. GA) ..............................................................................................................................11

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) ............................................28, 29

*Block v. Matesic*, 2023 U.S. Dist. LEXIS 97530 (S.D. Fla. June 5, 2023) ....... 17, 18

*Bobenhausen v. Cassat Ave. Mobile Homes, Inc*., 344 So. 2d 279 (Fla. Dist. Ct. App. 1977) .............................................................................................................30

*Cape Publ'ns v. Adams*, 336 So. 2d 1197 (Fla. 4th DCA 1976) ............................21

*Conformis, Inc. v. Aetna, Inc*., 58 F.4th 517 (1st Cir. 2023) ..................................29

*Dershowitz v. Cable News Network, Inc*. 541 F. Supp. 3d 1354 (S.D. Fla. 2021).. 20

*Dougherty v. Harvey*, 317 F. Supp. 3d 1287 (N.D. Ga. 2018).........................15, 16

*Evers v. Gen. Motors Corp.*, 770 F.2d 984 (11th Cir. 1985) .................................12

*Firestone v. Time, Inc.*, 305 So. 2d 172 (Fla. 1974)..............................................30

*Gottwald v. Bellamy,* 2011 U.S. Dist. LEXIS 62972 (M.D. Fla. June 15, 2011) 19, 20

*Great Lakes Ins. Se. v. Ming,*, 2025 U.S. Dist. LEXIS 169821 (M.D. Fla. Sep. 2, 2025)......................................................................................................................4

*Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293 (Fla. Dist. Ct. App. 1984) ............5

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983). ...................................25, 26

*Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008) ...................2, 5, 6, 16, 18

*Lapine v. Seinfeld*, 918 N.Y.S.2d 313 (Sup. Ct). ...................................................10

*Mass. Bay Ins. Co. v. D.C.J.D. Corp.*, 2024 U.S. App. LEXIS 9231 (11th Cir. Apr. 17, 2024 ................................................................................................................4

*Mazur v. Baraya*, 275 So. 3d 812 (Fla. Dist. Ct. App. 2019)................................31

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ..............................................8

*Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990)."............12

*Peerenboom v. Perlmutter*, 2017 Fla. Cir. LEXIS 14957 ........................................5

*Perry v. Cosgrove*, 464 So. 2d 664 (Fla. Dist. Ct. App.1985) .............................5, 7

*Pierce v. Warner Bros Entm't, Inc,* 237 F. Supp. 3d 1375 (M.D. Ga. 2017) .....9, 10

*Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543 (1985)..........8, 37

*Richard v. Gray*, 62 So. 2d 597 (Fla. 1953) .......................................................30

*Smith v. Cuban Am. Nat'l Found.,* 731 So.2d 702 (Fla. 3d DCA 1999) ...................5

*Southern Air Transport, Inc. v. Post-Newsweek Stations, Florida, Inc.*, 568 So.2d 927 (Fla. App. 3 Dist. 1990)..................................................................................21

*Sterling v. De La Rosa*, 2025 U.S. Dist. LEXIS 102062 (M.D. Fla.) ..................2, 5

*StopLoss Specialists, LLC v. VeriClaim, Inc.,* 340 F. Supp. 3d 1334 (N.D. Ga. 2018)....................................................................................................................13

*Wolfson v. Kirk*, 273 So. 2d 774 (Fla. Dist. Ct. App. 1973)..................................31

## Statutes

28 U.S.C. § 1291 .....................................................................................................1

## Secondary Sources

Restatement 2d of Torts, § 563 ...........................................................................7, 9

John C. Martin, Comment, The Role of Retraction in Defamation Suits, 1993 U. Chi. Legal F. 293(1993) .......................................................................................21

Manual Socias, Showing Constitutional Malice in Media Defamation, Fla. Bar. J., September/October 2018 ...........................................................................27, 28, 29

## JURISDICTIONAL STATEMENT

The basis for the U.S. Court of Appeals for the Eleventh Circuit's jurisdiction is pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposes of all of the Appellant's claims as to the Appellees.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err in granting Appellees Bill Maher ("Maher") and Home Box Office, Inc.'s  ("HBO") Motion for Summary Judgment ("MSJ")? ECF No. 194.

## STATEMENT OF THE CASE

This is a defamation case where Appellant Laura Loomer ("Ms. Loomer") was used as a vehicle for the Appellees and their counsel to attack President Donald Trump during the 2024 Presidential election cycle. This was done in order to try to influence the 2024 Presidential election by attacking Trump's reputation by claiming that he was having an adulterous affair with Ms. Loomer. Specifically, Appellees published:

> **I think maybe Laura Loomer's in an arranged relationship to affect the election because she's very close to Trump. She's 31, looks like his type. We did an editorial here a few years ago…it was basically, who's Trump fucking? Because I said, you know, it's not nobody. He's been a dog for too long, and it's not Melania. I think we may have our answer this week. I think it might be Laura Loomer**. Am. Comp. ¶ 18; Loomer Affidavit ¶ 2 (the "Defamatory Statement").

1

The Defamatory Statement constitutes objectively verifiable fact of and concerning Ms. Loomer. Defendant Maher poses the vulgar and highly offensive statement, "**who's Trump fucking**?" He then states that "**we may have our answer**" to this question: "**Laura Loomer**."  This is reasonably and plausibly understood by any reasonable viewer as Defendant Maher making a factual and at a minimum implying a false statement of objectively verifiable fact of and concerning Ms. Loomer. Am. Comp. ¶20.  This statement is also plainly false. Am. Comp. ¶ 21; Loomer Affidavit ¶ 3.

This Defamatory Statement  constitutes defamation *per se* because it "tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or tends to injure one in his trade or profession," *Sterling v. De La Rosa*, 2025 U.S. Dist. LEXIS 102062, at *9 (M.D. Fla. May 29, 2025), and defamation by implication because it (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts….'" *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Due to the clearly defamatory nature of this widely published statement, the District Court denied the Appellees' Motion to Dismiss, therefore finding that the Defamatory Statement was defamatory on its face. ECF No. 39. In short, the District Court also specifically found "Plaintiff's defamation *per se* claims are

properly pled and will not be dismissed," thereby also finding that the Defamatory Statement was defamatory *per se*. ECF No. 39 at 11.

After the District Court's correctly denied Appellees' Motion to Dismiss, in discovery, Ms. Loomer obtained a clear and unequivocal admission from Maher at his deposition that he had no knowledge and thus no basis to publish that Ms. Loomer was "fucking" President Trump and committing adultery behind the back of Melania Trump because they have no sexual relation. At his deposition, Maher made this critical admission:

> Q You don't have any information, do you, that Ms. Loomer had sex with Donald Trump, do you?
> A No…. Maher Deposition 23:7-9.

After discovery, Appellees filed a Motion for Summary Judgment, which was in effect a near verbatim recycling of their initial already-denied Motion to Dismiss. However, the District Court, inexplicably reversed course and chose to grant the Appellees' Motion for Summary Judgment. This was a clear error that must be reversed for the reasons set forth herein.

**SUMMARY OF THE ARGUMENT**

The District Court erred by reversing course and effectively overruling the findings that it had made on Appellees' Motion to Dismiss, which were law of the case, in order to erroneously grant the Appellees' Motion for Summary Judgment.

**STANDARD OF REVIEW**

3

"We review *de novo* a district court's grant of summary judgment…. In doing so, we construe all evidence and reasonable inferences in the light most favorable to the non-moving party." *Mass. Bay Ins. Co. v. D.C.J.D. Corp.*, 2024 U.S. App. LEXIS 9231, at \*7 (11th Cir. Apr. 17, 2024) (internal citation and quotation omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Great Lakes Ins. Se. v. Ming,*, 2025 U.S. Dist. LEXIS 169821, at \*3 (M.D. Fla. Sep. 2, 2025). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party…. A material fact is one that "might affect the outcome of the suit under the governing law." *Id*. (internal citations omitted). "Courts may not make credibility determinations or weigh the evidence when reviewing the record." *Id*. "**Instead, courts view evidence and draw all reasonable inferences in the nonmoving party's favor**." *Id*. (emphasis added) "In sum, the ultimate question…is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. at 4.

## **ARGUMENT**

The elements of defamation are "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a

public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Peerenboom v. Perlmutter*, 2017 Fla. Cir. LEXIS 14957, *24. To determine whether a statement is defamatory, it must be considered in context of the publication. *Smith v. Cuban Am. Nat'l Found.*, 731 So.2d 702, 705 (Fla. 3d DCA 1999).  A jury issue is present whenever a phrase is "ambiguous and reasonably susceptible of a defamatory meaning." *Perry v. Cosgrove*, 464 So. 2d 664 (Fla. Dist. Ct. App.1985).

Furthermore, of particular importance to this instant matter is the fact that Florida courts have found that one may not escape liability for defamatory conduct simply by attempting to couch a defamatory statement as  "opinion."  *Barnes v. Horan*, 841 So. 2d 472, 476-77 (Fla. Dist. Ct. App. 2002); *Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. Dist. Ct. App. 1984).

As found by the District Court in denying the Appellees' motion to dismiss, the Defamatory Statement constitutes defamation *per se* because it "tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or tends to injure one in his trade or profession." *Sterling v. De La Rosa*, 2025 U.S. Dist. LEXIS 102062, at *9 (M.D. Fla. May 29, 2025) and defamation by implication because it's (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts…."' *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

**I.    The Defamatory Statement Is An Actionable Statement of Fact**

In denying the Defendants' motion to dismiss, the District Court correctly held and reasoned that  "Maher cannot, at this stage, escape liability because he couches his statements as a joke, an opinion, or as "conjecture, hypothesis, or speculation" because the statements do not appear that way on their face." ECF No. 39 at 7. The District Court then went on to reason that:

> [w]hile Defendants may view Maher's statements as 'speculative joking,' he made them during a non-comedic and serious panel discussion with conservative pollster Kristen Soltis Anderson and former U.S. Senator Al Franken that involved topics such as alleged police brutality. Also, and, as Loomer points out, when Maher told the purported 'joke' about Loomer, 'it drew more groans from the audience than sparse laughter.'" ECF No. 39 at 7 – 8.

However, when presented with the motion for summary judgment, the District Court inexplicably reversed course and found that the Defamatory Statement did not constitute an actionable statement of fact using the same line of reasoning that it had done previously in denying the Appellees' motion to dismiss. This is a clear error that must be reversed, as there was simply no possibility that there was no genuine issue of material fact in this regard.

**A.    Maher's Self-Serving Testimony Regarding His Intent is Irrelevant**

Despite initially finding that the Appellees could not escape liability for defamation simply by couching their statements as a "joke," the District Court has now reversed course and found that because Appellee Maher had testified in his

deposition that he was "in his mind…making a joke," that the Defamatory Statement was no longer an actionable statement of fact. This was a clear error that must be reversed.

It is black letter law that the question of whether a statement is capable of a defamatory meaning is predicated upon whether "the communication was understood in the defamatory sense." *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. Dist. Ct. App. 1985). The relevant inquiry is **not** how Maher, *ex post facto*, attempts conveniently to disingenuously couch his statement as something other than what it clearly was when made during his deposition.  This is clearly set forth in Restatement 2d of Torts, § 563, cmt. c:

> The question to be determined is whether the communication is reasonably understood in a defamatory sense by the recipient….In determining the reasonableness of the recipient's understanding, that meaning is to be given to words which is ordinarily attached to them….. The defamatory imputation may be made by innuendo, by figure of speech, by expressions of belief, by allusion or by irony or satire. So too, it may be made by words spoken in jest if not so understood. (emphasis added).

The U.S. Supreme Court has conclusively found that a party cannot escape liability for defamation simply by couching his defamatory statement under the guise of opinion, and has even provided a clear illustrative example of this fundamental principle:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of  facts which lead to the  conclusion that Jones told an untruth. Even if the speaker states the facts  upon which he bases

> his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. **Simply couching such statements in terms of opinion does not dispel these implications**; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) (emphasis added).

The *Milkovich* Court apparently predicted and foretold of Appellees' meritless arguments back in 1990 and found that a Defendant cannot escape liability for his defamatory statements simply by using the phrase, "I think:"

> It would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *Id*. at 19.

Furthermore:

> "The proper focus of judicial inquiry in a case such as this is thus not whether the allegedly defamatory statement succeeds as comedy, nor whether its audience thought it to be humorous or believed it to be true; the threshold inquiry is simply whether the communication in question could reasonably be understood in a defamatory sense by those who received it." *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 554, 216 Cal. Rptr. 252, 259 (1985).

The District Court's reasoning on this issue is therefore fatally flawed and must be reversed. The District Court's reasoning, if allowed to stand, would create a dangerous loophole in defamation law, where a defendant would be permitted to say whatever he wants about another person as long as in his deposition after the fact, he claims that he intended to make a joke. This is not an accurate reflection of black-letter defamation jurisprudence and must be reversed.

**B.**    **Appellees' Self-Characterization of Maher as a "Comedian" Does Not Entitle Them to Summary Judgment**

The District Court appears to have credited the Appellees' failed argument that they are entitled to some type of novel "comedian immunity" that prevents them from being held liable for defamation. This is simply wrong. It makes no difference whether a defamatory statement was made by an individual that one could find off the street or by one who claims to be a "comedian." The relevant inquiry does not change regardless whether the publisher claims to be a comedian. *See* Restatement 2d of Torts, § 563, cmt. c.

The Appellees recycled their purported legal authority from their motion to dismiss, which the District Court initially rejected. However, for whatever reason, on summary judgment, the District Court reversed course and found these cases to be applicable. This is a clear, reversible error.

In *Pierce v. Warner Bros Entm't, Inc.*, 237 F. Supp. 3d 1375 (M.D. Ga. 2017), a Plaintiff sued based on a segment called "*What's Wrong with These Signs?*" on the Ellen DeGeneres Show. *Id*. at 1377. Specifically, in this segment, DeGeneres featured signs from businesses that contained errors or unfortunate double entendres, such as a picture of a sign reading "$exchange." DeGeneres proceeds to make a quick joke about the sign, like pronouncing "the word in the sign as 'sex change' and suggest[ing] that 'you can come back from your vacation feeling like a new man.'" *Id*. Plaintiff Titi Pierce had her yard sign featured on this

9

segment, and DeGeneres mispronounces her name as "titty," slang for a woman's breast, instead of its proper pronunciation, "tē-tē." *Id*. Under these facts, the Court found that the Plaintiff failed to state a claim for defamation. *Id*. at 1378. However, importantly, the Court did not make this finding simply because the case involved a segment on DeGeneres' comedic show, which would not have applied here in any event because Appellee Maher is a political pundit, not a comedian. The Court made sure to point out the fact that:

> In determining whether an allegedly false statement is protected under the First Amendment as rhetorical hyperbole, "the pivotal questions are whether [the challenged] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." *Id*. at 1379.

The *Pierce* Court found that under the specific facts of its case, which have no applicability or bearing on this case, that Ms. Pierce had failed to allege a defamatory meaning. *Id*. at 1379 – 80. Thus, this case[1] actually cuts against the Appellees' legally unsupported position that Appellee Maher is entitled to some form of blanket "immunity" from defamation simply because he claims to be a comedian and satirist, the former of which in particular is in dispute.  Indeed, there are a number of cases where a comedian has been found liable for defamation. For

---

[1] The same applies to *Lapine v. Seinfeld*, 918 N.Y.S.2d 313 (Sup. Ct.), where the Court found that "Plaintiff correctly argues that 'humor and comedy have never been held to be entitled to absolute or categorical 1st Amendment protection,'" *id*. at 328, but found that the Plaintiff's specific defamation claim failed as a matter of law.

10

instance, recently, rapper Cardi B won a defamation suit against comedian and blogger Tasha K for having defamed her. *See Belcalis Marlenis Almanzar v. Latasha Transrina Kebe et al*, 1:19-cv-1301 (N.D. GA).

Finally, there is, at a minimum a disputed material fact with regard to Maher's self-characterized status as a "comedian." Ms. Loomer has submitted an affidavit to the contrary, which states that Appellee Maher is not a comedian. Loomer Affidavit ¶ 9. He is a political pundit and television host. Loomer Affidavit ¶ 9. Real Time is also not comedy production. It is a political talk show. Loomer Affidavit ¶ 10. Thus, even if the District Court had a legal basis to manufacture a blanket "immunity" for so-called "comedians," there was still, at a minimum, a disputed material fact with regard to whether Maher is truly a "comedian."

### C.    The Defamatory Statement Was Reasonably Understood as a Statement of Fact

In denying the Appellees' motion to dismiss, the District Court correctly reasoned that because Appellee Maher's alleged "joke", "drew more groans from the audience than sparse laughter," ECF No. 39 at 8, the Defamatory Statement constituted a statement of fact. However, on summary judgment, the District Court, when presented with this exact same argument, strangely reversed course and held that:

> While Plaintiff focuses on the fact that some audience members "groan[ed]" rather than laughed at the remarks about Plaintiff and Trump, that too is evidence that they understood it to be a joke, just one that warranted a groan—a frequent audience reaction to stand-up comedy and late-night comedy jokes. ECF No. 194 at 14.

Thus, when faced with the exact same scenario, the District Court inexplicably[2] reversed its findings. This error must be reversed.

The District Court's initial findings on the motion to dismiss were correct. Maher made the Defamatory Statement during a panel discussion with conservative pollster Kristen Soltis Anderson and former U.S. senator Al Franken involving serious topics such as alleged police brutality involving Miami Dolphins receiver Tyreek Hill. Loomer Affidavit ¶ 11. When Maher told the purported "joke", it drew more groans from the audience than sparse laughter. Loomer Affidavit ¶12. Below is a screenshot of the two panelists immediately following the Defamatory Statement:

---

[2] The so called "expert" opinions submitted by Appellees offer no relevant analysis about the actual facts and circumstances at issue in this case, where Maher has—with admittedly no knowledge thereof—falsely accused Ms. Loomer of "fucking" President Trump. Am. Comp. ¶ 18. Both "experts" just state—as they obviously have been well paid to do, in a conclusory fashion with no supporting analogous case law involving similar facts—that Appellees should not be liable for defamation. But even more important, it is well settled that summary judgment cannot be decided on "the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. Gen. Motors Corp.*, 770 F.2d 984 (11th Cir. 1985). "Experts may not supply legal conclusions or instruct the factfinder on the law; "the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)."



September 13, 2024: Alex Karp, Kristen Soltis Anderson, Al Franken

The expression and reaction of the panelists, and Mr. Franken's in particular, are not ones that the Court might typically expect to see from someone who had just understood Appellee Maher's Defamatory Statement as a "satire" or "joke," evidencing that many people understood it as a statement of fact.

*StopLoss Specialists, LLC v. VeriClaim, Inc.,* 340 F. Supp. 3d 1334 (N.D. Ga. 2018) is particularly on point. *StopLoss* was a summary judgment opinion that involved a Plaintiff emergency mitigation and remediation services provider who was retained by Escambia County to be its primary mitigation contractor following a severe rainstorm in 2014. *Id*. at 1338-39. Defendant VeriClaim was hired by Escambia County's insurance carriers to be the insurance adjuster for this project. *Id*. at 1339. At one point during this project, Tom Rongstad, the general claims adjuster for VeriClaim, sent an email to eight people involved with the Escambia County loss that stated the following:

Team,
This will confirm documentation exists in several forms:
1. Stop Loss is Dumping water into dried buildings.

13

> 2. Stop Loss then employs 12 temp labors [sic.] to push it around on the concrete slab with squeegees.
> <u>This appears to be Insurance Fraud</u>**.**
> An investigation has been initiated…. *Id*. at 1342-43 (emphasis added).

This email led to litigation for defamation between the parties, and in particular the bolded portion of the email was under contention. On summary judgment, the Court found that "Rongstad's use of the phrase '[t]his appears to be insurance fraud,' constitutes defamation per se":

> Rather, a natural reading of the statement, even considering Rongstad's use of the qualifying phrase "this appears," would lead the average reader to the conclusion that the writing, on its face, is stating a defamatory fact about the Plaintiffs that can potentially be proven false (*i.e.*, Rongstad's allegation that Plaintiffs have engaged in insurance fraud can arguably be proven false by Plaintiffs' proffering of relevant facts and evidence that the activities engaged in were undertaken for a lawful purpose). *Id*. at 1352.

Applying this same reasoning to this instant case, Appellee Maher's statement that Ms. Loomer "might" be "fucking" President Trump is also capable of being proven false. Either Ms. Loomer did this and committed adultery, or she did not. This can be proven through affidavits from Ms. Loomer and President Trump, the former of which was produced and therefore, at a minimum, creating a disputed material fact in this regard.

Similarly, the Court can turn to *Dougherty v. Harvey*, 317 F. Supp. 3d 1287 (N.D. Ga. 2018), which involved the following statement:

14

> [T]he guy in the middle there he may or may not be HIV positive, I don't know, I have no idea, I have no idea I can't confirm nor deny that, that he is or isn't, I don't know, Chad, I don't know, I don't know . . . I have no idea. *Id*. at 1289.

The Court denied summary judgment on Plaintiff's count for defamation *per se* based on this statement. *Id*. at 1292. In doing so, the Court reasoned that "the out-of-place insertion of Harvey's apophatic HIV statement is susceptible to but one interpretation—that Dougherty is HIV positive." *Id*. The *Dougherty* Court provided a lesson on linguistics that explains why Harvey's statement was defamatory *per se*, and which also describes Maher's conduct:

> On its face, Harvey's statement is a form of apophasis—a common rhetorical device in which the speaker or writer brings up a subject couched in a denial or dismissal and stated expressly to make the point denied or dismissed. That is, the device is utilized in order to "deny[] one's intention to speak of a subject that is at the same time mentioned or insinuated. See Webster's Unabridged Dictionary of the English Language, RHR Press (2001). The use of this device has the effect of emphasizing the subject while maintaining plausible deniability. See www.merriam-webster.com/dictionary/apophasis (last visited June 26, 2018)." Robinson v. Perales, 894 F.3d 818, 829 (7th Cir. 2018).Though the term itself is perhaps obscure to non-rhetoricians, apophasis is a common and familiar device that has been used for thousands of years to communicate—on the face of a statement—the very facts the statement pretends to disclaim. **To ignore the obvious import of the defining feature of Harvey's statement would be to improperly elevate form over substance.** *Id*. at 1191-92 (emphasis added).

"Apophasis" describes exactly what Maher has attempted to do here in an even more egregious fashion than in *Dougherty*. Harvey published that Dougherty "may

or may not be HIV positive" and Maher published that Ms. Loomer "might" be "fucking" President Trump.

Under the context of the black-letter law set forth above, Appellees actually ironically conceding the factual nature of the Defamatory Statement by admitting that Maher "prefaced it by setting out what ["facts"] it was based upon." Motion for Summary Judgment at 26. The "facts" were (1) that Ms. Loomer was "close" with President Trump, and (2) President Trump has an alleged history of adultery. Thus, where the Appellees have effectively conceded that the Defamatory Statement could be understood as a statement of fact, and it was a clear error for the District Court to find that there was no genuine issue of disputed material fact in this regard.

**D.    Alternatively, at a Minimum, The Defamatory Statement is Defamation by Implication**

Defamation by implication arises…from what is implied when a defendant '(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication . . . ."' *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Defamation by implication' is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Id*.

16

In *Block v. Matesic*, 2023 U.S. Dist. LEXIS 97530 (S.D. Fla. June 5, 2023) the Court denied the defendants' motion to dismiss the plaintiff's claim for defamation by implication on facts that are highly analogous to this instant case. *Block* involved a letter sent by defendant members of a condo association concerning the Plaintiff, which stated:

> Recently Tower One's members were subjected to at least two email blasts from a disgruntled owner disparaging the Association, its directors, the construction project, and its associated professionals with incorrect statements and facts. These unsolicited emails [sic] blasts to owners visibly listed each member's email address causing serious privacy and security concerns for everyone. Neither the Association nor its management was the source of our owners' email addresses and the method of obtainment by the owner remains unknown. The Association and management staff take your privacy and security seriously. We advise all members to check and consider updating their computer's security and privacy setting. *Id*. at 1-2.

The Plaintiff filed suit, alleging among other causes of action, defamation by implication. The Court found that the subject letter supported a claim for defamation by implication because the Plaintiff had alleged three facts contained in the letter which "imply a defamatory connection between them":

> First, the letter claimed that "[t]hese unsolicited emails [sic] blasts to owners visibly listed each member's email address causing serious privacy and security concerns for everyone."…Second, the letter noted that "[n]either the Association nor its management was the source of our owners' email addresses and the method of obtainment by the owner remains unknown"…..Third, the letter "advise[d] all members to check and consider updating their computer's security and privacy settings." *Id*. at 12 – 13.

17

In dismissing Ms. Loomer's defamation by implication claim on the initial complaint, the Court reasoned that a such a claim must involve "true facts to create a defamatory effect." ECF No. 31 at 10. The Amended Complaint therefore made clear that Defendants' allegations that "Ms. Loomer is very close to Trump" and "Ms. Loomer is 31 years old" were true. Like in *Block*, these true facts were juxtaposed with the Defamatory Statement in order to create the false and defamatory implication that Ms. Loomer was "fucking" President Trump. Am. Comp. ¶ 18, 24.  And, as set forth in *Jews for Jesus*, the Defamatory Statement is defamatory by implication because it omits material facts, namely that (1) Ms. Loomer was not "fucking" President Trump, and (2) Defendant Maher had no knowledge that Ms. Loomer was "fucking" President Trump.  Defamation by implication thus has a lower evidentiary threshold than simple defamation and is clearly present here**.**

### E.     Alternatively, at a Minimum, The Defamatory Statement Is Actionable Mixed-Opinion

Because the preceding section more than conclusively shows that the Defamatory Statement is an actionable statement of fact, no further analysis in this regard must be undertaken. However, as an alternative argument, the Defamatory Statement at a minimum also constitutes an actionable "mixed opinion" statement.

> A statement of "'mixed opinion,' which is based on undisclosed facts that infer the plaintiff has committed an illegal act, or one that damages his or her business reputation, is actionable." Id. (citation

omitted). <u>Additionally, courts have recognized that "'[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications."</u> *Gottwald v. Bellamy*, 2011 U.S. Dist. LEXIS 62972, at *10 (M.D. Fla. June 15, 2011) (emphasis added).

*Gottwald* involved a defamation case brought by music producer Dr. Luke against a Defendant country music duo, the Bellamy Brothers. *Id*. at 2. The Defendants launched a campaign asserting that one of Plaintiff's songs infringed on their copyrighted song, and published the following statement:

> This isn't the first time [Plaintiffs Max Martin and Dr. Luke] have been accused of copyright infringement. Dr. Luke was sued in 2007 for copyright infringement . . . for "lifting" portions of Avril's hit song "Girlfriend." The suit subsequently settled in 2008. There is also a current Katy Perry song . . . called "California Gurls" produced and co-written by Dr. Luke and Max Martin . . . where the Beach Boys' record label has filed a diminutive claim against the writers and publishers of the song for credit and royalties. Dr. Luke was party to yet another copyright infringement suit in 2008 for the song "Feels Like Tonight" by Daughtry. <u>Although this is not conclusive evidence that Dr. Luke intentionally lifted a phrase from a Bellamy Brothers song, it certainly shows a possible pattern and warrants a more serious look into the matter</u>. *Id*. at 2-3 (emphasis added).

The Court denied the Defendants' motion to dismiss and found that the challenged underlined portion of the statement above was not "pure opinion." *Id*. at 10 – 11. The same applies to the facts here.

Here, Appellees have conceded that at a bare minimum, the Defamatory Statement is actionable "mixed opinion." In their Motion for Summary Judgment

19

at 26, Appellees details the contrived "facts" which support the Defamatory Statement: (1) Ms. Loomer is very close to Trump, (2) Ms. Loomer is 31 years old, (3) Ms. Loomer looks like [Trump's] type, and (4) Trump is a  "dog" who is fucking *someone*, but not his wife, Melania." MSJ at 26. Because Maher's recitation of "facts" is both inaccurate and incomplete—notwithstanding his assessment being totally inaccurate—under *Gottwald*, this constitutes a mixed-opinion which is also actionable as defamation.

The District Court did not even address this argument, and its failure to even consider this argument instead of erroneously granting the Appellees' motion for summary judgment is another error which must be reversed.

## II.    Appellees Are Not Entitled to Summary Judgment on the Issue of Actual Malice

Actual malice is shown when a plaintiff shows "facts giving rise to a reasonable inference that the defendant published the story knowing that it was false or with reckless disregard for whether it was false or not." *Dershowitz v. Cable News Network, Inc*. 541 F. Supp. 3d 1354, 1367  (S.D. Fla. 2021) (internal quotation omitted).

Furthermore, "most authorities suggest that a failure to retract, in conjunction with other circumstances, may be used to establish the requisite level of [constitutional] malice." John C. Martin, Comment, The Role of Retraction in

Defamation Suits, 1993 U. Chi. Legal F. 293, 295 (1993). Awareness of facts prior to the defamatory statements being made which strongly suggested innocence of plaintiff from the published accusations shows actual malice. *Cape Publ'ns v. Adams*, 336 So. 2d 1197 (Fla. 4th DCA 1976). Lastly, whether in the context of the facts of this case the statements were published with actual malice is a question for the jury. *Southern Air Transport, Inc. v. Post-Newsweek Stations, Florida, Inc.*, 568 So.2d 927, 929 (Fla. App. 3 Dist. 1990).

> **A.      The Defamatory Statement Was Patently Worthy of Doubt And There is Record Evidence Showing This Which Was Ignored by the District Court**

Here, the Appellees were clearly not entitled to summary judgment on the issue of actual malice. The District Court held that "[t]here is no evidence that the Episode was so 'inherently improbably, or obviously worthy of doubt,' to support a finding of actual malice." ECF No. 194 at 15. This is simply not true.

*First*, as a matter of pure common sense and logic, it is patently "inherently improbable" and "obviously worthy of doubt" that a private citizen like Ms. Loomer would be able to have a secret affair with the President of the United States of America—an individual who is guarded by the Secret Service 24/7 and who is constantly surrounded by other persons in his administration.  The President of the United States of America is perhaps the most watched and secured person in the entire world—and even moreso with President Trump having been the target of

21

assassination attempts. It is completely unbelievable that a private individual like Ms. Loomer would be permitted by President Trump's Secret Service to spend any time alone with him, much less that this could occur without anyone finding out.

Furthermore, whether Trump had any affairs prior to becoming the President of the United States is completely irrelevant. Trump as a private citizen before entering politics had plenty of privacy and did not have Secret Service agents around him 24/7. That is obviously not the case now. It is a completely different set of facts and circumstances.

Similarly, the "reported closeness" between Ms. Loomer and President Trump does not justify the required mental leap to offensively claim without a shred of evidence that they were having a sexual relationship. Ms. Loomer's own social media posts only indicated that she was close with President Trump, not that there was any sexual component to their relationship. The news reports that Ms. Loomer was travelling with President Trump also do not support the leap that there was a sexual relationship, particularly because President Trump was amidst a presidential campaign, and Ms. Loomer is a prominent conservative investigative journalist, as well as formerly a candidate for U.S. Congress. There is not one iota of evidence on the record that would justify Appellees construing Ms. Loomer and President Trump's close, professional relationship into a sexual one. The District Court's logic and reasoning in this regard is therefore totally flawed.

22

*Second*, given the inherently improbable nature of the Defamatory Statement, Ms. Loomer made certain to obtain testimony from Appellee Maher regarding whether he had any actual knowledge of an affair between President Trump and Ms. Loomer. Unsurprisingly, Appellee Maher admitted that he did not have any information or knowledge:

> Q You don't have any information, do you, that Ms. Loomer had sex with Donald Trump, do you?
> A No…. Maher Deposition 23:7-9.

Furthermore, Defendant HBO's corporate representative, Nina Rosenstein, admitted at deposition that all of Defendant Maher's statements are reviewed either before filing or after filming and before airing:

> MS. ROSENSTEIN: Our shows are reviewed by legal, and if there are no legal issues, then the answer is yes,  he can say whatever.
> MR. KLAYMAN: So do you have knowledge that the show on September 13, 2024, was reviewed by legal as to  content?
> MS. ROSENSTEIN: All our shows are reviewed. The written materials are reviewed prior to the show and the --  once the show is taped, there is a legal sign-off and a programming sign-off.
> MR. KLAYMAN: Did legal review the entire show with regard to any of his ad libs -- Bill Maher's ad libs?
> MS. ROSENSTEIN: Yes. The show is taped at about 4:00 in L.A., and then it's -- and then we have a review that comes right after that in the overtime segment. And then legal programming sign off, and that was reviewed in that way.
> MR. KLAYMAN: So legal -- legal reviewed not just the written content but his ad libs?
> MS. ROSENSTEIN: Correct.
> MR. KLAYMAN: And how long after that review takes place is the show aired -- on September -- was it aired on September 13th?

23

MS. ROSENSTEIN: Probably -- so sign-off is usually around, I would say, 10 after 8:00, and the show – Eastern Time, and the show airs at 10:00.
MR. KLAYMAN: Ten after 8:00 p.m.?
MS. ROSENSTEIN: Yes, correct.
MR. KLAYMAN: So there's a two-hour window?
MS. BOLGER: Object to the form.
MS. ROSENSTEIN. Well, it's fed right away. But there is a two-hour window between when the show is taped and  when it airs. Rosenstein Deposition 48:3 – 50:6.

Thus, the testimony of Appellees themselves contradict the District Court's erroneous finding that there was no "evidence that the Episode was so 'inherently improbable, or obviously worthy of doubt," to support a finding of actual malice." ECF No. 194 at 15. The evidence was in the record. The District Court simply chose to ignore it. Appellees admitted that they had no knowledge that Ms. Loomer was "fucking" President Trump and had time to correct the defamation. Then, despite having multiple layers of legal review in place, still chose to publish the Defamatory Statement, evidencing a clear intent to defame.

## B.    Appellees Had No Reputable Sources For the Defamatory Statement and Their Investigation was Grossly Inadequate

Appellees have conceded that that relying on random individuals without direct knowledge X posts speculating on Ms. Loomer and President Trump's relationship constitutes the extent of their "investigation," it is clear that such an investigation was wholly inadequate to justify publishing the Defamatory Statement to a global audience on HBO. "When a story is not 'hot news,' 'actual

24

malice may be inferred when the investigation . . . was grossly inadequate in the circumstances.'" *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983).

*Hunt* is illustrative of the Defendants' failures. *Hunt* involved a publication called Spotlight, published by Liberty Lobby. *Id*. at 634. On the front page of the August 14, 1978 Spotlight was the announcement "CIA TO NAIL HUNT FOR KENNEDY KILLING" and referred the reader to page 4 for details. *Id*. On page four, a larger headline stated "CIA TO 'ADMIT ' HUNT INVOLVEMENT IN KENNEDY SLAYING." *Id*. Furthermore:

> A biography of Victor Marchetti, the author of the article, appeared on this page. This brief background of the author explained that Marchetti "has been involved in U.S. Intelligence activities for almost 20 years, 14 years of that time being with the CIA, the last three years of which he was staff assistant to Richard Helms. He is the author of 'The CIA and the Cult of Intelligence ' and 'The Rope Dancer. ' *Id*.

The article detailed a CIA plot to frame Hunt for the Kennedy assassination. *Id*. Hunt sued for Liberty Lobby for defamation and won. *Id*. On appeal, Liberty Lobby argued that there was insufficient evidence of actual malice, which was rejected by the Eleventh Circuit. In doing so, they found that (1) the story was not "hot news" and (2) Liberty Lobby's investigation was inadequate. "We believe that the jury could properly decide that Liberty Lobby's "investigation" did not pass muster and, accordingly, infer actual malice therefrom." *Id.* at 645. Notably, the investigation by Liberty Lobby far exceeds what Appellees here did. The Liberty Lobby investigation consisted of the fact that they trusted Marchetti and that

25

Marchetti had assured them that his sources were reliable. *Id*. at 638. Marchetti had submitted articles that were published by Spotlight in the past without issue. *Id*. Spotlight "thought very highly of Marchetti, believed him to have access to high level confidential information and, in general, felt they had no reason to doubt the veracity of his article." *Id*. In *Liberty Lobby*, the source was at least someone who had experience in the field of his reporting, and someone that they had worked with in the past. Here, the "sources" are random, unverified X posts from hostile individuals with no direct knowledge speculating on Ms. Loomer and President Trump's relationship. Thus, if the investigation in *Liberty Lobby* was deemed inadequate, so too must the "investigation" here. And, if a story about a sitting President's assassination was not considered "hot news," certainly the tabloid fodder here published by the Appellees  is not even news at all, much less "hot news." Thus, actual malice can be inferred from the Appellees' claimed "sources" and "investigation."

## C.    The District Court Ignored Other Evidence of Actual Malice

The District Court did not credit the article by a prominent legal scholar on defamation titled "*Showing Constitutional Malice in Media Defamation*" in The Florida Bar Journal, which sets forth twenty-four (24) "badges[3]" or additional

---

[3]  Manual Socias, "*Showing Constitutional Malice in Media Defamation*," Fla. Bar. J., available at: https://www.floridabar.org/the-florida-bar-journal/showing-constitutional-malice-in-media-defamation/

indicators of actual malice -- beyond even the direct evidence here that Maher and

HBO had no knowledge of what they published -- in media publications. Many of

these "badges" apply here, including:

(a) <u>failure to conduct a due diligence and an investigation before publishing serious and damaging allegations that are not "hot news"</u>, shown Defendant Maher's admission that he had no knowledge that Ms. Loomer was "fucking" President Trump. Maher Deposition 23:7-9.

(b) <u>failure to give the plaintiff a fair opportunity to reply to defamatory allegations</u>, shown through Defendants' refusal seek comment from Ms. Loomer in advance of the subject broadcast and/or to have extended Ms. Loomer the courtesy of appearing on a future episode of "Real Time" to deny the published statements in person and to attempt to mitigate the damages caused by their defamatory statements. Loomer Affidavit ¶ 4.

(c) <u>omitting pertinent information to create a false impression</u>, shown through Defendants' omission of the fact that Defendant Maher's had no knowledge that Ms. Loomer was "fucking" President Trump. Maher Deposition 23:7-9

(d) <u>a reporter's knowledge of facts conflicting with the report</u>, shown through the fact that Defendant Maher knew that his statements were manufactured and false or, at a bare minimum, acted with reckless disregard for the truth to increase his and HBO's viewership, "clicks" and thus profits. Maher Deposition 23:7-9

(e) <u>a preconceived determination to disparage a plaintiff or a preconceived slant or view,</u> shown through the fact that Defendants used Ms. Loomer as the tool to attack President Trump, whom they loathe, during the 2024 election cycle in order to try to influence the election. This preconceived slant is demonstrated in Defendant Maher's tweets, which were exhibits to his deposition. Examples of these tweets are: (1) "Oh for fuck sake, if Trump was any more of a pussy, he'd have to grab himself" *Deposition Exhibit 9* at 13*; (2)  Does Trump have to actually blow Putin? Is that what it would take? Flagrant D, balls gargling the leader of the Russian Federation? Jus asking." *Deposition Exhibit 9* at 26; (3) Trump's sons (Douchbag Bon Fuckface and Thurston Shitbag the 3rd, you'll recall) look like the date rapist in every after school special ever. *Deposition Exhibit 9* at 3. Defendant Maher even

attacked President Trump's wife, Melania, for no apparent reason: "You can tell Trump misses Melania, wherever she is – today he asked Mike Pence to swat away his hand." Maher Deposition Exhibit 9 at 42.

(f) <u>repetitive media attacks on the plaintiff</u>, shown through the September 20th episode of "Real Time," where Defendants compounded the damage to Ms. Loomer with a segment titled "24 Things You Don't Know About Laura Loomer" where he continues to make false, disparaging statements about Ms. Loomer such as : It's because the person, like Trump, the nut at the center of it, starts surrounding himself with – I mean, he normally surrounds himself with pretty crazy people – but this Laura Loomer…she's the new groupie in Trump's circle…here are 24 things you don't know about Laura Loomer." Loomer Affidavit ¶ 5.

(g) <u>a reporter's ill will[4] toward the plaintiff</u>, shown through the September 20th episode of "Real Time," and the fact that Defendants loathe Donald Trump and those who are associated with him, including Ms. Loomer. Maher Deposition Exhibit 9 and 10.

(h) <u>refusal to publish a retraction upon learning of errors in a story</u>, through the Defendants' refusal to retract upon receiving notice of their defamatory statements pursuant to Fla. Stat. § 770.01 and refusal to issue a public apology and have Ms. Loomer appear on an episode of "Real Time" to mitigate the harm done to her. Loomer Affidavit ¶ 4.

(i) <u>prior and subsequent defamatory statements</u>, shown through the September 20th episode of "Real Time." Loomer Affidavit ¶ 5.

---

[4] This Court must reconsider its position on the facts of this case about "ill will" as an indication of actual malice, as this results in the strictest and harshest actual malice standard in the nation, deviating from the standard used by many other circuits. The U.S. Court of Appeals for the Second Circuit, First Circuit, and Eighth Circuits consider this type of "ill will" evidence. For example in *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015), the Second Circuit held, "[a]lthough actual malice is subjective, a court typically will infer actual malice from objective facts,' understanding that a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice."

28

It is perhaps telling of the District Court's mindset that it strained to find "what Maher did or did not say days later does not inform the analysis," ECF No. 194 at 16, while at the same time—as set forth in the prior section—crediting Maher's *ex post facto* false testimony that he intended to tell a "joke."

In any event, the bottom line is that courts around the country have found that actual malice may be inferred from the objective context in which allegedly defamatory statements are made, such as the badges set forth by Mr. Socias. In *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015), the U.S. Court of Appeals for the Second Circuit held, "'[a]lthough actual malice is subjective, a court typically will infer actual malice from objective facts,' understanding that a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice." The U.S. Court of Appeals for the First Circuit is in accordance, holding that because direct evidence of a speaker's subjective belief is rare, actual malice "may be shown through inference and circumstantial evidence." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 536 (1st Cir. 2023).

In sum, Ms. Loomer has at a bare minimum shown a number of disputed material facts with regard to the question of actual malice. Appellees are therefore not entitled to summary judgment on this issue and the District Court's ruling must be reversed.

## III.    Appellees Are Not Entitled to Summary Judgment on the Issue of Damages

29

It is indisputable that the Defamatory Statement constitutes defamation *per se* because it publishes that Ms. Loomer might be "fucking" and committing adultery with President Trump, who is a married man. Am. Comp. ¶ 18. "The false accusation of a woman of adultery is libelous per se." *Firestone v. Time, Inc*., 305 So. 2d 172, 175 (Fla. 1974)(vacated on other grounds); "…words which falsely accuse a woman of adultery are libelous per se and that a plaintiff need not allege or prove general or special damages. *Bobenhausen v. Cassat Ave. Mobile Homes, Inc*., 344 So. 2d 279, 281 (Fla. Dist. Ct. App. 1977). The Defamatory Statement is also defamatory *per se* because it "it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace… [and] it tends to injure one in his trade or profession." *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953). Clearly, the false statement that Ms. Loomer had an affair with a married man – the President of the United States no less – would subject her to "hatred, distrust, ridicule, contempt, or disgrace." Furthermore, such an allegation also severely harms her trade or profession as an investigative journalist because it leads the public to falsely believe that she uses sex to further her career instead of the truth, which is that her success has been built through years of hard work. Because the Defamatory Statement here is clearly defamatory *per se*, damages – as well as actual malice are clearly presumed. *Wolfson v. Kirk*, 273 So. 2d 774 (Fla. Dist. Ct. App. 1973).

The District Court tries to get around *Wolfson* by finding that the Appellees are "media defendants," and thus actual damages are still required. Appellees, however, are not "media defendants." Florida courts use the terms "media defendant" and "non-media defendant" to "separate third parties who are not engaged in the dissemination of news and information through the news and broadcast media from those who are so engaged. *Mazur v. Baraya*, 275 So. 3d 812, 816 (Fla. Dist. Ct. App. 2019). The District Court already admitted that Appellees are not "media defendants" when it strained to find that Maher was merely a "well-known comedian" in order to justify its false finding that the Defamatory Statement was not a statement of fact. The District Court cannot have it both ways—finding that Appellees are "media defendants" who are engaged in the dissemination of news when it comes to damages but then are merely comedians when it comes to whether the Defamatory Statement is capable of a defamatory meaning. This is a clear error by the District Court that must be reversed.

In any event, Ms. Loomer has produced threatening emails that she received after the Defamatory Statement, showing harm to her reputation and standing as a direct and proximate result of the Defamatory Statement. This includes emails stating:

> "you are the only whore trump has ever denied fucking. I guess he's not gay."

31

"Hi you cocksucking filthy ugly CUNT! Wish I could get close enough to you to grab your dirty throat and slowly cut it and watch you bleed out on the floor. I can smell your unwashed disgusting filthy pussy from here."

"Hey Groomer, Close your legs please." Loomer Affidavit ¶ 16.

Furthermore, with regard to Ms. Loomer's defamation *per quod* claims, Appellees are not entitled to summary judgment because Appellees are unable to show that it is "undisputed" that Ms. Loomer cannot prove damages. Ms. Loomer has produced evidence that she had applied for a job in President Trump's administration. Loomer Affidavit ¶ 20. This evidence consists of her email exchange with President Trump's staff regarding her resume and cover letter. Loomer Affidavit ¶ 20. The evidence also shows that Ms. Loomer's chances of getting a job in President Trump's administration was hardly farfetched, given that President Trump had previously offered her a job working on his campaign. Loomer Deposition 72:6-8 ("Q -- and at that time, he offered you a job on his campaign; is that correct? A Yes. Mm-hmm."). Ms. Loomer also testified that she had conversations with President Trump's Chief of Staff, Susie Wiles, confirming that she would have a job in President Trump's administration if he won the 2024 election:

I had conversations with Susie Wiles that I would have a position at the White House after the election if -- if President Trump won. And he did win. And I had this conversation on the phone and in person multiple times during the campaign. Loomer Deposition at 82:9-13.

It was also widely reported prior to the Defamatory Statement, Ms. Loomer had been travelling with President Trump and had access to President Trump. Loomer Affidavit ¶ 23. This was true. What was not true, however, was that she was having a sexual, adulterous relationship with President Trump.

Then, Appellees used their platform to broadcast to millions of people that Defamatory Statement on September 13, 2024. Am. Comp. ¶ 18, Loomer Affidavit ¶ 2. As a direct and proximate result of this Defamatory Statement, the entire attitude from the Trump Administration shifted against Ms. Loomer, as they were clearly trying to distance themselves from the outrageous and scandalous if not radioactive defamatory allegations made by the Appellees. As testified by Ms. Loomer, after the 2024 Presidential election after President Trump has won, Ms. Loomer attempted to engage President Trump's office on their past promise of employment, but was effectively brushed off and referred to the transition team:

> A: I mean, after the election was over, I had conversations with the transition staff. You can see  from this letter. And you know, I was like, "Oh. You have to talk to the transition team." But I -- like I said, I was promised a position multiple times, not just by President Trump, but also, by Susie Wiles. Loomer Deposition at 84:1-3.

And, it is undisputed that a formal offer of employment with President Trump's administration, which the evidence shows that Ms. Loomer had been promised prior to the September 13, 2024 Defamatory Statement, never actually materialized, Loomer Affidavit ¶ 25, because as Ms. Loomer testified to at her

deposition, she had become "radioactive" as a result of the Defamatory Statement. Loomer Deposition 96:3-8.

Given this series of events, it is clear that Appellees did not demonstrate that it was "undisputed" that Ms. Loomer cannot prove damages. The District Court, however, simply ignored all of the record evidence set forth above and instead chose to adopt the Appellees' false statements.

The District Court adopted the Appellees' argument that Ms. Loomer "has not identified a *single* individual who was allegedly caused to believe that she was sleeping with President Trump," MSJ at 35. Not only is this false, as shown through the disgusting, threatening, and vulgar emails received by Ms. Loomer above, it also completely misses the point and is a red herring argument. Ms. Loomer having lost the opportunity to work in President Trump's administration was not the result of Ms. Loomer's friends and acquaintances falsely believing that she had "fucked" President Trump. It was due to the public perception of her and President Trump's relationship caused by the Defamatory Statement, and the fact that President Trump and his staff felt the need to publicly distance themselves from her as a direct and proximate result of the Defamatory Statement, causing her to not be given a job in his administration. Thus, the harm and actual injury at issued occurred regardless of Ms. Loomer being able to name a single individual person in her social circle who believed that she had "fucked" President Trump.

34

Finally, Appellees disingenuously miscast Ms. Loomer's damages as "speculative" simply because Ms. Loomer did not have knowledge of the exact dollar amount that individuals who worked in presidential administrations were able to parlay their increased fame and notoriety into post-administration jobs. It is, frankly, unreasonable and unrealistic for District Court and the Appellees to expect Ms. Loomer to know how much these individuals made prior to their employment in presidential administrations and how much they made after.  What is indisputable is that these individuals almost always emerge from working in a presidential administration with increased fame and notoriety, which logically translates into increased compensation. As just one prominent example, before serving as Press Secretary in the Biden administration, Jen Psaki was working as a political commentator for CNN. Loomer Affidavit ¶ 28. After her work in the Biden administration, she was given her own prime-time show on MSNBC called *The Briefing With Jen Psaki*. Loomer Affidavit ¶ 28. This is a clear, astronomical career advancement as a direct and proximate result of her employment in the Biden administration. At her deposition, Ms. Loomer testified:

> People who get to work in the White House get to then parlay their -- you know, their resume, which includes working for a presidential administration into getting other jobs in the future. And so, you know, when you look at the type of opportunity this is costing me, especially long-term, as it relates to my professional aspirations to work in politics, to work in media, it's very damaging. And you know, it makes me wonder how  much it's going to cost me both, in my

reputation and also, in -- in monetary value. Loomer Deposition 244:20 – 245:9.

Accordingly, it is clear that Appellees have fallen woefully short of the daunting summary judgment standard with regard to Ms. Loomer's damages. The District Court's decision to adopt the false "facts" and arguments put forth by the Appellees, while completely ignoring the record evidence submitted by Ms. Loomer is a clear error that must be reversed.

## CONCLUSION

In sum, the Appellees' MSJ should have been denied in its entirety. The MSJ recycles the Appellees' same failed arguments from their initial motion to dismiss without introducing any new, relevant and non-objectionable record evidence that comes close to satisfying the daunting summary judgment standard. However, inexplicably, the District Court reversed course and granted summary judgment.

It was wrong for the District Court to find that there was not a disputed material fact that the Defamatory Statement could not support a defamatory meaning due to the Appellees' ridiculous narrative that the Defamatory Statement was just a "joke." Notwithstanding the fact that there was nothing funny about the Defamatory Statement, black-letter law makes it clear that it is irrelevant whether Defendants now attempt to couch the Defamatory Statement as a "joke" in order to

try to escape liability for their actions. *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 554, 216 Cal. Rptr. 252, 259 (1985).

On the other hand, Ms. Loomer has provided more than the requisite record evidence to, at a minimum, show a disputed material fact with regard to Appellees' failed arguments concerning the factual nature of the Defamatory Statement, actual malice, and damages.

This is not a run of the mill defamation case. This involves one of the most outrageous and harmful defamatory statements possible, where Appellees have falsely broadcasted to their audience of millions that Ms. Loomer "might be fucking" President Trump—perhaps the most well-known person on earth. The harm to Ms. Loomer as a result of this has been astronomical and she has been painted as a whore, a prostitute, and a slut. The Court must ask itself how it would feel if the victim of such a defamatory statements was its daughter or spouse. Almost certainly the Court would be disgusted and enraged and also rightly bring suit for defamation.

Appellees, however, have refused to take any accountability for the harm that they have caused. After having profited handsomely from the clicks, fame, and notoriety garnered by destroying Ms. Loomer, a woman, to harm President Trump, they then tried to gaslight Ms. Loomer and the District Court into believing that the Defamatory Statement was "just a joke." Regrettably, and strangely, the District

37

Court reversed course and later adopted this ruse. In so doing, it committed clear reversible error that now must be remedied by this Court to prevent a manifest injustice.

Dated: July 31, 2026                                    Respectfully Submitted,


                                        */s/ Frederick Sujat*
                                        Frederick Sujat, Esq.
                                        5675 Brookfield Cir E
                                        Fort Lauderdale, FL, 33312
                                        fsujat@yahoo.com
                                        Tel: 954-815-5221

                                        *Counsel for Appellant*


## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 9,665 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 15.28 in 14-point Times New Roman.


Dated: July 31, 2026                    */s/ Frederick Sujat*


38

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 31, 2026 a true and correct copy of the foregoing was served on counsel for Appellees through the Court's eservice procedures.


<u>/s/ *Frederick Sujat*</u>